## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

RANDALL R. HINKLEY,          )
                                 )
           **Plaintiff,**         )
                                 )         **CIVIL ACTION**
**v.**                           )
                                 )         **No. 03-2620-CM**
                                 )
ROADWAY EXPRESS, INC., et al.,   )
                                 )
          **Defendants.**      )
_____)

## MEMORANDUM AND ORDER

Plaintiff brings this action pursuant to § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, claiming that his employer, defendant Roadway Express, Inc. ("Roadway"), terminated him in violation of the collective bargaining agreement between Roadway and plaintiff's union, defendant Local Union No. 41 of the International Brotherhood of Teamsters ("Union").  Plaintiff also alleges that the Union breached its duty of fair representation to him when it unsuccessfully represented him in arbitration hearings. Both Roadway and the Union filed motions for summary judgment (Docs. 50 and 54).  For the following reasons, the court grants the motions.

**I.**      **Facts[1]**

In June 2003, plaintiff worked as a city driver for Roadway, a nationwide trucking company. Roadway and the Union are parties to a collective bargaining agreement that provides for final and binding arbitration of grievances brought pursuant to the agreement.  The agreement provides that employees may

---

[1]  The court construes the facts in the light most favorable to plaintiff as the non-moving party pursuant to Fed. R. Civ. P. 56.

not be discharged "without just cause."  The agreement also provides that "no warning or notice need be

given to an employee before he is discharged if the cause of such discharge is proven dishonesty."  Plaintiff

was a member of the Union, who was the exclusive bargaining agent for a bargaining unit of Roadway

employees that included plaintiff.

      The grievance procedure contained in the agreement provides for a series of joint labor-

management committees to hear grievances that the parties cannot resolve.  The committees consist of

equal numbers of members appointed by Union affiliates and employers that are signatories to agreements

with Union affiliates.  If a decision is reached by a particular committee, its decision is final and binding on

the parties.

      Roadway trucks generally are equipped with a GPS tracking system and a digital dispatch system

that the driver uses to log delivery and pick-up information.  The digital dispatch system, or Roadway

Digital Dispatch, is referred to as "RDD."  Drivers are required to log in to the RDD when they arrive at a

delivery, when they depart from a delivery, and when they take their lunch.  Plaintiff's supervisors told him

that he could make his various RDD entries later, at the first convenient opportunity or at the next stop.

Drivers receive a half-hour lunch and two ten-minute breaks.  They are required to ask permission to take

lunch outside of the fourth through sixth hour of their shift, but plaintiff's supervisors told him that he could

take his lunch break at the most convenient time and that he did not have to request permission to do so.

      On Friday, June 6, 2003, plaintiff was scheduled to make deliveries to the Home Depot Bannister

store and the Home Depot Lee's Summit store.  Between these scheduled deliveries, plaintiff stopped in

Independence, Missouri and went to the Home Depot Independence store.

      On Monday, June 9, 2003, Roadway's Driver Manager Darryl Hoag reviewed plaintiff's RDD

entries and noticed that while plaintiff logged in at 4:09 p.m., he did not log in leaving the yard until 5:03

p.m., a gap Mr. Hoag believed to be significant.  He also noted that plaintiff logged in his arrival at Home

Depot Bannister at 6:42 p.m., suggesting that it took one hour and thirty-nine minutes to arrive at his

destination.  Plaintiff's odometer reading stated that he had driven thirty-three miles in that time.  Plaintiff did

not log in a departure time from Home Depot Bannister.  His next entry was an arrival at Home Depot

Lee's Summit at 9:39 p.m.  Mr. Hoag also knew that plaintiff made a delivery at the end of his shift to

Home Depot Olathe, after his Home Depot Lee's Summit delivery, but there was no entry at all for that

delivery or for any lunch break.  Mr. Hoag then reviewed plaintiff's loading guides, dispatch summary

sheet, delivery receipts, and GPS positioning report.  The GPS positioning report indicated that plaintiff's

RDD entries were incorrect.

Mr. Hoag asked plaintiff to report to his office with a Union representative when he arrived at work

on June 9.  He asked plaintiff where he was between his stop at Home Depot Bannister and Home Depot

Lee's Summit, and plaintiff told him that he was at Home Depot Independence.  Mr. Hoag then asked

plaintiff why he was there, and plaintiff stated that he was taking care of "the customer," but did not give

any more specific details.  He later stated that he was taking his lunch break.  At some point during the

conversation, plaintiff told Mr. Hoag that he was trying to avoid the Grandview Triangle traffic, which is

normally backed-up on Friday nights.

Roadway terminated plaintiff on June 11, 2003 for alleged "proven dishonesty" related to plaintiff's

actions on June 6, 2003.  Plaintiff's discharge alleged that on June 6, 2003: (1) plaintiff's RDD entries

showed an arrival time at Home Depot Bannister at 1842 hours, but plaintiff had in fact arrived at 1804

hours; (2) plaintiff made an unauthorized stop at Home Depot Independence; (3) plaintiff was off-route in

Independence for his next scheduled delivery in Lee's Summit; (4) plaintiff could not account for the time he spent in Independence that evening; and (5) plaintiff had first claimed to be "taking care of business," but he later claimed to be on break. After terminating plaintiff, Mr. Hoag told Union Steward Randy Pyeatt that he hated firing plaintiff because plaintiff had "done a good job," had "got a lot done" on Friday, June 6, and had given Roadway "a fair day's work."

Following plaintiff's discharge, the Union filed a grievance on plaintiff's behalf. On June 17, 2003, a joint labor-management committee known as the Kansas City Local Cartage Committee ("Local Cartage Committee") held a grievance hearing. The Local Cartage Committee consisted of two members appointed by the Union and two members appointed by signatory employers.

At the June 17 hearing, plaintiff's Union representative, Victor Terranella, raised a point of order. Mr. Terranella pointed out that the collective bargaining agreement prohibited Roadway from using computer tracking devices (i.e., the GPS system) for disciplinary purposes. He further argued that Roadway had, contrary to the agreement, used the GPS device in plaintiff's truck for the purpose of disciplining plaintiff. In support of his argument, Mr. Terranella read from a notarized memorandum dated June 13 by Mr. Hoag. According to the memorandum, Mr. Hoag had admittedly reviewed the logs from the truck's GPS system to track where plaintiff had been. Mr. Terranella argued that the case should not be heard, and Roadway should restore plaintiff's employment with full seniority and backpay. The Local Cartage Committee deadlocked on the point of order.

Because the Local Cartage Committee deadlocked, the Union processed plaintiff's grievance to the next joint labor-management committee under the contractual grievance procedure, the Missouri-Kansas Two-State Committee ("MOKAN Committee"). The MOKAN Committee held a hearing on July 8,

2003, at which Mr. Terranella again raised the point of order that Roadway had improperly used the GPS device to discipline plaintiff, but did not introduce Mr. Hoag's June 13 memorandum into evidence. Plaintiff requested that Mr. Terranella offer the memorandum to establish that Roadway had used the GPS device to conduct an investigatory review of plaintiff, in the nature of a "fruit of the poisonous tree" argument. The MOKAN Committee upheld the Union's point of order, and sent the grievance back to the Local Cartage Committee to be heard on the merits without use of the information obtained from the GPS device. Plaintiff testified in deposition that he had no complaint regarding how Mr. Terranella presented the Union's point of order at the MOKAN Committee meeting.

On July 22, 2003, the Local Cartage Committee heard plaintiff's grievance on the merits, and ultimately upheld plaintiff's discharge. At the July 22 hearing, Mr. Terranella presented several arguments on plaintiff's behalf. Mr. Terranella argued that plaintiff was justified in choosing a route that went through Independence, because June 6, 2003 was a Friday evening and the Grandview Triangle traffic at that time made it unsafe to use the more direct route between Home Depot Bannister Mall and Home Depot Lee Summit. He explained that plaintiff, once in Independence, took his lunch there and also assisted another Roadway driver, Larry Buckelew, in unloading his truck at Home Depot Independence. He also pointed out that plaintiff had admitted to Roadway that he had been in Independence, and that it was inconsistent for Roadway to discharge Plaintiff for dishonesty for something that plaintiff had always admitted.

Mr. Terranella also presented a letter at the hearing from Mr. Buckelew, which corroborated plaintiff's claim that he helped Mr. Buckelew unload his freight in Independence. Plaintiff also addressed the Local Cartage Committee and explained why he had chosen to avoid the Grandview Triangle (and drive to Independence) on the evening in question, and that he did not lie to Roadway about what he had

done.  Plaintiff testified in deposition that he got to say everything he wanted to say at the July 22 hearing.

At the end of the July 22 hearing, the committee asked plaintiff if he had an opportunity to present all the evidence he wanted to, and if the Union adequately represented him.  Plaintiff said "yes," but now states that he only said that because Mr. Terranella told him during the hearing that he should trust his (Mr. Terranella's) judgment, follow his lead, and not dispute anything he said.

One of the Roadway-appointed members sitting on the July 22 Local Cartage Committee was John Graves, who was employed by Yellow Transportation.  On July 8, 2003, Yellow Transportation had announced its intent to acquire Roadway Corporation, which is Roadway Express's parent corporation. The corporate acquisition was finalized in December 2003.  Under the rules of procedure governing grievances, no representative of an employer which is a party to the grievance is permitted to act as a member of the panel hearing the case.

Mr. Terranella was aware of the Yellow Transportation acquisition announcement, but he did not object to Mr. Graves sitting on the committee and hearing plaintiff's grievance, although plaintiff asked him to object and Mr. Terranella had previously told plaintiff that he thought it was a conflict of interest.  Mr. Terranella testified in deposition that he did not object because he had not received a directive from the freight division of the International Brotherhood of Teamsters that would change the established practice of Roadway and Yellow employees hearing the grievances of each other.  Mr. Terranella admitted that he made no inquiry before July 22 to determine the Union's position on the Yellow-Roadway conflict of interest issue, and did not contact the Union's attorneys.  Plaintiff believes that Mr. Terranella should have objected to Mr. Graves sitting on the Local Cartage Committee because of his conflict of interest.

Plaintiff also believes that Mr. Terranella should have introduced the Hoag memorandum at the July

22 hearing.  During the hearing, plaintiff told Mr. Terranella to object to Roadway's continued use of

information obtained from the GPS tracking data, but Mr. Terranella did not.  He later explained that he did

not object because he was following the direction of the MOKAN Committee decision.

## II.    Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue

as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In

applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most

favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)

(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.   Discussion

Section 301 of the Labor-Management Relations Act governs lawsuits alleging that an employer

violated its contract with a labor organization.  29 U.S.C. § 185.  But before an employee may bring a §

301 suit against his employer, he must first exhaust the grievance or arbitration procedure contained in the

collective bargaining agreement.  *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163-64 (1983).

Most collective bargaining agreements, including the agreement between Roadway and the Union, result in

final, binding arbitration procedures.  The only way an employee can recover from his employer, then, is to

show that the union breached its duty of fair representation in handling the grievance.

The allegations in this case – that Roadway breached its contract with the Union and that the Union

breached its duty of fair representation to plaintiff – form what is commonly known as a "hybrid § 301"

action.  To prevail in a hybrid § 301 action, a plaintiff must prove both claims.  *See id.* at 163-65; *Hines v.*

*Anchor Motor Freight, Inc.*, 424 U.S. 570, 570-71 (1976) ("To prevail against either the company or the

Union, petitioners must show not only that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union.").  If either of the claims fails, plaintiff cannot recover from either defendant because the claims are "inextricably interdependent."  *DelCostello*, 462 U.S. at 165.  Here, the court need only address the Union's alleged breach of the duty of fair representation.

Because federal labor law favors the resolution by parties of disputes arising under collective bargaining agreements, courts "do not invade this domain on the complaint of an employee unless his union is 'grossly deficient' in its representation or 'recklessly disregards' the employee's rights."  *Amburgey v. Consolidation Coal Co.*, 923 F.2d 27, 29 (4th Cir. 1991) (citation omitted).  In order to show that the Union breached its duty of fair representation, plaintiff must show that the Union's conduct was "arbitrary, discriminatory, or in bad faith."  *Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1463, 1470 (10th Cir. 1993); *see also Webb v. ABF Fright Sys., Inc.*, 155 F.3d 1230, 1240 (10th Cir. 1998) (stating that "perfunctory" union conduct may be actionable in certain contexts or as a specific type of arbitrary conduct).  Plaintiff argues that the Union's conduct was arbitrary, perfunctory, and in bad faith.

A union's conduct is not arbitrary unless it is "so far outside a 'wide range of reasonableness' as to be irrational."  *Id.* (citation omitted).  Because "[t]he grievance processes cannot be expected to be error-free," a plaintiff must do more than demonstrate "mere errors in judgment" to meet the "arbitrary" standard. *Hines*, 424 U.S. at 571; *see also Marquez v. Screen Actors Guild Inc.*, 525 U.S. 33, 40 (1998) (giving the union "room to make discretionary decisions and choices, even if those judgments are ultimately wrong").  The court's review of the union's actions is highly deferential, *id.*, and courts "should not substitute their judgment for that of the union, even if, with the benefit of hindsight, it appears that the union

could have made a better call," *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995); *see also Young v. United Auto. Workers Labor Employment & Training Corp.*, 95 F.3d 992, 997 (10th Cir. 1996) ("[W]e will not substitute for our own the Union's good faith, nondiscriminatory judgment in assessing and presenting its members' grievances."). "Mere negligence, poor judgment, or ineptitude by a union is insufficient to establish a breach of the duty of fair representation." *Buford v. Runyon*, 160 F.3d 1199, 1202 (8th Cir. 1998). A union's actions are not perfunctory unless the union acted "'without concern or solicitude' or gives a member's grievance only cursory attention." *Martin v. Am. Airlines, Inc.*, 390 F.3d 601, 608 (8th Cir. 2004) (citation omitted). In order to show that a union acted in bad faith, a plaintiff must offer evidence of "fraud, deceitful action or dishonest conduct." *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees of Am.v. Lockridge*, 403 U.S. 274, 299 (1971); *see also Considine v. Newspaper Agency Corp.*, 43 F.3d 1349, 1361 (10th Cir. 1994).

Moreover, a breach is not established merely by showing that the grievance was meritorious. *Vaca v. Sipes*, 386 U.S. 171, 195 (1967); *McLinn v. Boeing Co.*, 715 F. Supp. 1024, 1031-33 (D. Kan. 1989). And the breach also must have been material – a claim for breach of the duty of fair representation is not actionable unless it was sufficiently material to have altered the result of the grievance process. *Smith v. United Parcel Serv., Inc.*, 96 F.3d 1066, 1069 (8th Cir. 1996); *VanDerVeer v. United Parcel Serv., Inc.*, 25 F.3d 403, 405 (6th Cir. 1994) ("[I]f a union fails to present favorable evidence during the grievance process, this failure may constitute a breach of duty only if that evidence probably would have brought about a difference decision.").

Plaintiff claims that the Union's handling of his grievance was arbitrary, perfunctory, and in bad faith because: (1) "the Union failed to present evidence that Roadway was improperly using information obtained

from the GPS tracking system to support the discharge decision"; and (2) the Union "failed to object to the obvious conflict of interest in having a Yellow manager sit on a panel hearing a Roadway employee's grievance."[2]  With respect to plaintiff's first theory, the court notes that the Union raised the issue in the first hearing before the Local Cartage Committee and in the MOKAN Committee hearing.  In the MOKAN hearing, Mr. Terranella argued that "the company, indirectly or directly, used a tracking system to initiate the discipline or initiate to follow through with investigating the issue to discipline."  The MOKAN Committee upheld plaintiff's point of order, and held that the grievance could be heard on its merits.  The court will not find that Mr. Terranella had an obligation to re-raise the issue in the July 22 Local Cartage Committee hearing when the MOKAN Committee had already ruled on it.  *See Young*, 95 F.3d at 998 ("[T]he failure to present a particular argument is insufficient to create a genuine issue of material fact in light of the other efforts made by [the Union].").  Mr. Terranella made numerous other arguments in support of plaintiff's case.  Even if Mr. Terranella could have been more zealous in the presentation of plaintiff's defense, the fact that a union failed to represent a member's interests "as vigorously as it could have does not establish a section 301 violation."  *Mock v. T.G. & Y. Stores, Inc.*, 971 F.2d 522, 531 (10th Cir. 1992).  The court also will not fault Mr. Terranella for failing to offer Mr. Hoag's memorandum as evidence, as his failure to do so was not irrational or outside the range of reasonableness.  Again, the MOKAN Committee had already ruled on the issue.  Mr. Terranella's tactical decisions regarding what information and exhibits to present do not, as a matter of law, rise to the level of arbitrary or perfunctory

---

[2]  These theories are taken directly from the Pretrial Order.  Although plaintiff lists several other theories in his brief, the Pretrial Order controls the direction of the case and is not superseded by subsequent pleadings.  *Hullman v. Bd. of Trustees*, 732 F. Supp. 91, 93 (D. Kan. 1990) ("A plaintiff cannot escape the binding effect of the pretrial order by raising new issues in a response to the defendant's motion for summary judgment." (citation omitted)).

conduct.

With respect to plaintiff's second theory, the court finds that the Union's failure to object to Mr. Graves sitting on the panel was not arbitrary, perfunctory, or in bad faith. As of July 22, 2003, Yellow had only *announced* its intention to acquire Roadway. Mr. Terranella testified that he had not received information suggesting that Yellow employees could no longer sit on panels. Although plaintiff argues that Mr. Terranella had an affirmative duty to research the issue in advance and ask "higher-up Union officials," plaintiff has not presented any evidence that an objection would have been successful or that it would have altered the disposition of the grievance. *See Smith*, 96 F.3d at 1069 (holding summary judgment proper where grievant faulted the union for failing to obtain certain records, but could not show how they would have altered the disposition of the grievance). The Union, on the other hand, has offered evidence that Mr. Terranella still does not raise this objection in any of his grievances, based on a conversation he had with a representative of the International Brotherhood of Teamsters that led him to believe there is no conflict of interest problem. Mr. Graves testified in deposition that employees of Yellow and Roadway continue to sit on each others' grievance panels. He did not view it as a conflict of interest because the companies were not merged; although Yellow acquired Roadway, they still competed against one another. He also testified that the potential Yellow-Roadway conflict of interest issue had only been raised one time in the hearings he has participated in. He participates in Yellow-Roadway hearings monthly. This suggests that failure to raise the issue is not an arbitrary action. And Mr. Terranella's other actions and arguments during the three hearing that he represented plaintiff demonstrate that he was not acting without concern or solicitude.

Finally, the court notes that apparent conflicts of interests are incorporated into the structure of joint labor-management committees, which are comprised of employer representatives and union

representatives.  In fact, members of Local 41 sit on the grievance panels because it is the only Local in the area.  Where a collective bargaining agreement establishes a method for resolving disputes, it is presumed to be fair.  *See Sheet Metal Workers Local 420 v. Kinney Air Conditioning*, 756 F.2d 742, 746 (9th Cir. 1987) (finding no evidence to defeat presumption of fairness, where board members who had pecuniary interest adverse to the plaintiff were selected in accordance with collective bargaining agreement).

Plaintiff insinuates that the Union acted in bad faith because Mr. Terranella commented to plaintiff that the Union panel members "were on the same page" because "we discuss these cases before we go and talk about them."  This evidence is insufficient to create an issue for the jury whether the Union acted in bad faith.  The record includes no evidence suggesting that the Union acted with improper motive in connection with plaintiff's grievance.

Plaintiff also suggests that the Union acted in bad faith by withholding from plaintiff the first page of the Hoag memorandum, which showed that Mr. Hoag used the GPS data to conduct his investigatory interview of plaintiff.  Plaintiff states that he learned for the first time in November 2003, when he received the first page of the memorandum, that Mr. Hoag had improperly used the GPS tracking data.  The court finds plaintiff's argument disingenuous.  Plaintiff has admitted on multiple occasions that he knew that Roadway had reviewed the GPS data before the interview.  In fact, one of plaintiff's proposed uncontroverted facts is: "During the interview Hoag had several documents laid out on the table in front of him, including the GPS tracking map. . . ."  Another proposed fact states that during the July 22 hearing, "plaintiff told Terranella to object to Roadway's continued use of information obtained from the GPS tracking data."  In contrast, plaintiff's Declaration states that he "realized for certain for the first time that

-12-

Hoag had improperly used the GPS tracking data to conduct his investigatory interview. . . ."  The court finds that plaintiff's declaration is merely an attempt to create a sham fact issue and is, therefore, insufficient to preclude summary judgment.  *See Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986).

Finally, the court notes that plaintiff had an opportunity to speak at the grievance hearings, yet failed to raise the matters he now complains of.  *See Taylor v. Belger Cartage Serv., Inc.*, 762 F.2d 665, 668 (8th Cir. 1985) (holding that plaintiff did not have an actionable claim for breach of the duty of fair representation where grievant had an opportunity to speak at the grievance hearings).  He also expressed satisfaction with his Union representation on multiple occasions, despite the fact that he now complains of the representation.

Plaintiff, through his arguments, seems to be asking this court to hold his Union representative to a higher standard than the law requires.  Mr. Terranella may or may not have acted negligently by not raising the issues that plaintiff claims he should have.  But negligence is not enough in a § 301 action.  *See Young*, 95 F.3d at 997.  Plaintiff may disagree with the outcome of his grievance proceeding, but there is no recourse for him in this court unless he can show that the Union handled his grievance in an arbitrary or discriminatory manner or in bad faith.  Plaintiff lacks the evidence to make this showing.  Because he cannot show that the Union breached its duty of fair representation, plaintiff also cannot recover from Roadway for breach of the collective bargaining agreement.  *See DelCostello*, 462 U.S. at 165.

**IT IS THEREFORE ORDERED** that the motions for summary judgment filed by Roadway and the Union (Docs. 50 and 54) are granted.

Dated this 13th day of February 2006, at Kansas City, Kansas.


                                        **s/ Carlos Murguia**
                                        **CARLOS MURGUIA**
                                        **United States District Judge**